MARINE, Collector, *v.* ROBSON *et al.*

*(Circuit Court, D. Maryland.   June 25, 1891.)*

CUSTOMS DUTIES—FREE LIST—ANTIQUITIES.
   A portrait by an old master, imported by the owner of a collection of such portraits, who has purchased it for purpose of adding it to his collection, should be admitted free under Act Cong. March 3, 1883, par. 669, which places on the free list "cabinets of coins, medals, and all other collections of antiquities," although the portrait in question is the only one of the collection that is imported at the time.

At Law.

Application for a review of the decision of the board of United States general appraisers, reversing the decision of the collector at Baltimore as to the rate and amount of duty assessed on an oil painting imported per vessel Carthagenian on August 25, 1890.   The case arises under section 15 of the act of June 10, 1890.   The collector assessed duty on the article under the act of March 3, 1883.   The importer contended that the picture was free of duty under paragraph 669 of the said law, as one of "a collection of antiquities."   The following opinion was rendered by the board of general appraisers, sitting at the port of New York:

"SOMERVILLE, General Appraiser.   The article under consideration is a valuable picture or oil painting owned by Mr. Robert Garrett, of Baltimore, being a portrait of the Duchesse de Croye.   There seems to be little doubt of the fact that it is a work of art, painted by the celebrated artist Rubens long before the year 1700.   Its value and genuine antiquity are fully corroborated by the cost, which was £3,150, or over $15,000.   It was imported on August 25, 1890, and was, therefore, subject to the provisions of the tariff act of March 3, 1883.   It is shown that the owner of the picture, the appellant, has for some years been making a collection of like works of art by the old masters, which are of genuine antiquity.   This collection he now owns, and owned at the time of the present importation, they being placed in his dwelling-house in the city of Baltimore, and all of which had been admitted free of duty as 'collections of antiquities.'   He purchased the picture in question in London, and imported it for the special purpose of adding it to his private collection already on hand, and not for sale.   He claims that it should be admitted free of duty, under the provisions of paragraph 669 of the tariff act of 1883, (section 2503, 22 U. S. St. at Large, p. 518,) which places on the free list, as exempt from any duty, 'cabinets of coins, medals, and all other collections of antiquities.'   We need not review the history of this clause in our tariff legislation, intervening between the years 1846 and 1870, or even the later act of October 1, 1890.   This is referred to in *U. S.* v. *Sixty-Five Terra-Cotta Vases,* 10 Fed. Rep. 880, 18 Fed. Rep. 508.   If the rule of *ejusdem generis* is to govern, which restricts a general word following particular and specified words to the same genus as those words, then no collection of antiquities can be admitted to the free list unless they are of a kind analogous to 'cabinets of coins, medals;' etc.   But this is a mere rule of construction, not of absolute application in all cases.   It is followed upon the theory that words are intended ordinarily by the law-makers to take meaning and color from other words with which they are associated in the same phrase or sentence.   The rule may, therefore, be rejected when there is any adequate reason to show that the general word was not used in the limited order of signification attached to the particular and specific words.   End. Interp. St. §§ 405, 408, *et seq.*   It is our judgment that the history of these clauses repels the idea that no other

collection of antiquities were intended to be exempt from duty except those of a kindred kind with 'old coins and metals.' This construction would narrow the interpretation not only beyond the letter of the statute, but beyond the manifest policy of its enactment as apparently designed by congress, which was to encourage the collection, among other things, of antique works and things of art. The uniform construction of the treasury department, supported by a long line of decisions, and the practice of the custom-houses, support this conclusion; and this practical interpretation of the law, even if of doubtful propriety, is entitled to much respect by the courts. *Robertson* v. *Downing,* 127 U. S. 608, 8 Sup. Ct. Rep. 1328; 16 Op. Attys. Gen. 354.

"But one other inquiry remains. Can a single article of genuine antiquity be construed to come within the statute, when it is to be added to others owned by the importer, and already constituting a collection on hand? We have heretofore decided this in the affirmative, and adhere to that conclusion. The decision of the collector was erroneous, and will be reversed. He is authorized to reliquidate the entry in accordance with law."

*John T. Ensor,* U. S. Dist. Atty., for appellants.

*John L. Thomas* and *Wm. F. Frick,* for appellees.

BOND, J. It appears from admitted facts in this case that, Robert Garrett having purchased a portrait by P. P. Rubens from Thomas Agnew & Sons of London, it was consigned by the seller, through G. W. Wheatley & Co., to Messrs. Robson, Son & Co., at Baltimore, with instructions to deliver the Rubens to Mr. Garrett. The collector of the port of Baltimore assessed the same for duty, which was paid under protest, the purchaser contending that a portrait by Rubens was an antique; that, having a collection of portraits by the old masters at his house in Baltimore, this particular painting was to be added to it, and should be admitted free under Act Cong. March 3, 1883, par. 669. The local board of appraisers at Baltimore decided that the Rubens, having been painted prior to 1700, was an antique, and, being a part of Mr. Garrett's collection, not yet hung with the rest of the old masters in his gallery, was to be admitted free of duty. The naval officer of the port, as he was required by regulation to do where there is a difference of opinion between the collector and the appraisers, coincided with the latter, and the collector appealed to the board of general appraisers at New York, who determined likewise that the painting was free from duty, and ordered the money already paid to be returned to Mr. Garrett, and that the painting be delivered to him. No new testimony has been taken in this court.

But two errors are alleged in the appeal from the decision of the board of general appraisers, which we are asked to correct: *First.* That the Rubens in question was not one of a collection of antiques, because it had never been in Mr. Garrett's house in Baltimore. From this it seems that it is the opinion of the collector that the collection of antiquities must be made abroad at one stroke, and imported together, else the separate constituent parts of it are liable to duty. But the pictures of the old masters cannot be purchased or brought together in any such way, and to so construe the act would render it nugatory. The *second* error assigned is the same as the first, the language being amplified; the collector main-

taining that one painting is not a collection. But in this case it is not necessary to determine that proposition, for it is admitted that Mr. Garrett had and has a collection of portraits by the old masters, to which this Rubens was to be added. When it arrived in Baltimore it was a part of that collection; the only thing to be said about it being that some of the portraits Mr. Garrett had collected were at his dwelling, while a part of the collection was at the custom-house. It is to be noted, moreover, that the genuineness of the portrait is not disputed in this appeal. The decision of the general board of appraisers will be sustained, and the appeal dismissed.